UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 13bk28123 |
| | ) | |
| DEBRA WEST, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

The matter before the court arises out of the objection (the "Objection") of the Chapter 7 trustee, Barry A. Chatz (the "Trustee"), to the exemption that debtor Debra West (the "Debtor") claimed in her interest in her former husband's 401(k) plan. The Debtor claims the exemption under section 12-1006 of the Illinois Code of Civil Procedure. For the reasons set forth herein, the Objection is not well taken, and the claim of exemption allowed.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). An objection to a debtor's claim of exemption is a core proceeding. 28 U.S.C. § 157(b)(2)(B); *In re Johnson*, 480 B.R. 305, 308 (Bankr. N.D. Ill. 2012) (Baer, J.). The court also has constitutional authority to determine the exemption because, even though the exemption may derive from state law, "[t]he right to exempt property from the bankruptcy estate is established by an express provision of the Bankruptcy Code (section 522) and is central to the public bankruptcy scheme." *In re Carlew*, 469 B.R. 666, 673 (Bankr. S.D. Tex. 2012) *aff'd sub nom. W. v. Carlew*, CIV.A. H-12-0913, 2012 WL 3002197 (S.D. Tex. July 23, 2012).

Accordingly, final judgment is within the scope of the court's authority.

## BACKGROUND

On July 12, 2013, the Debtor commenced the above-captioned case by filing a petition under Chapter 7 of the Bankruptcy Code. Prior to the petition date, the Debtor and her former spouse, Daniel West, were involved in a divorce proceeding in the Circuit Court of Cook County. The state court entered a Judgment for Dissolution of Marriage on April 11, 2013, which incorporated the Marital Settlement Agreement (the "MSA") executed by the Debtor and Mr. West. The MSA provides for the Debtor to receive $80,000 from Mr. West's retirement plan with his employer (the "Retirement Plan"). However, the Debtor had not received an actual distribution of the funds prior to the commencement of this case, and has not since received such funds.

On Schedule B, the Debtor listed an interest of $80,000 in the Retirement Plan. On Schedule C, the Debtor claimed her interest in the Retirement Plan as exempt pursuant to 735 ILCS 5/12-1006. The Trustee timely filed the Objection on November 27, 2013.

## PROCEDURAL HISTORY

Neither party has requested an evidentiary hearing, instead submitting this matter for ruling on their papers and arguments of counsel. In considering the Objection, the court has evaluated the arguments of the parties at the February 4, 2014 hearing on the Objection, has reviewed the Objection itself and the exhibits submitted in conjunction therewith [Docket No. 22], and has considered:

(1) Response to Chapter 7 Trustee's Objection to Debtor's Claim of Exemptions [Docket No. 29]; and

(2) Chapter 7 Trustee's Reply in Support of Objection to Debtor's Asserted Exemption Pursuant to Bankruptcy Rule 4003(b) [Docket No. 30].

Though the foregoing items do not constitute an exhaustive list of the filings in this case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993); *Inskeep v. Grosso (In re Fin. Partners)*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989) (Sonderby, J.) (authorizing a bankruptcy court to take judicial notice of its own docket).

## DISCUSSION

At its core, the matter before the court is simple. The Debtor wishes to have the court determine that her interest in the Retirement Plan is not property of the bankruptcy estate. Failing that, the Debtor seeks to have her interest in the Retirement Plan found to be exempt from prosecution. However, given the pending transfer of the funds from the Retirement Plan to the Debtor, the issue is complicated somewhat by recent case law. The court will consider each issue in turn.

### A. Property of the Bankruptcy Estate

The Debtor wishes, first and foremost, to have her interest in the Retirement Plan found not to be property of her bankruptcy estate.

In this regard, the oft-quoted phrase "[p]roperty interests are created and defined by state law" immediately comes to mind. *Butner v. United States*, 440 U.S. 48, 55 (1979). As this court has pointed out in the past, however, *see, e.g., Sullivan v. Glenn (In re Glenn)*, 502 B.R. 516, 542 (Bankr. N.D. Ill. 2013) (Barnes, J.), the *Butner* decision contains one very important caveat. The Supreme Court in *Butner* went on to state that "[*u*]*nless some federal interest requires a different result*, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner*, 440 U.S. at 55 (emphasis added).

This is a case that, in part, illustrates the exception.

The property in question is a portion of Mr. West's Retirement Plan. It appears that the Retirement Plan is created pursuant to and governed by section 401(k) of title 26 of the United States Code (hereinafter, the "Internal Revenue Code" and, in short, "IRC § ___"). While the parties throughout the proceeding refer to the Retirement Plan as a 401(k) plan, neither party has provided the court with a copy of the Retirement Plan itself, and neither party has briefed whether the plan is a qualified plan pursuant to IRC § 401.

If the Retirement Plan is a 401(k) plan, it is federal law that must be looked to as to the creation and nature of interests in the Retirement Plan. That law permits spouses of plan participants to receive all or a portion of the benefits payable to a participant under a plan pursuant to a qualified domestic relations order. 26 U.S.C. §§ 401(a)(13)(B), 414(p)(8). Federal law makes clear, therefore, that the Debtor is permitted to have an interest in a 401(k) plan. Federal law does not, however, provide guidance as to whether such an asserted interest is otherwise valid. For that, the court must look to state law. *Butner*, 440 U.S. at 55.

As a matter of Illinois law, the Retirement Plan constituted marital property prior to the entry of the Judgment for Dissolution of Marriage. On this much, the parties agree. The parties further agree that the Illinois Marriage and Dissolution of Marriage Act provides that "[e]ach spouse has a species of common ownership in the marital property which vests at the time dissolution proceedings are commenced and continues only during the pendency of the action." 750 ILCS 5/503(e). Due to that law, and thereafter due to the Judgment for Dissolution of Marriage, in accordance with that Judgment, the Debtor has an interest in the Retirement Plan. Upon the entry of the Judgment for Dissolution, which incorporated the MSA, that interest became quantified and the Debtor's sole and separate property. *See Cullen v. Cullen (In re Cullen)*, Nos. 95-B-25374, 99-A-621, 2000 WL 381929, at \*4 (Bankr. N.D. Ill. Apr. 12, 2000) (Ginsberg, J.); *Bigelow v. Brown (In re Brown)*, 168 B.R. 331, 334 (Bankr. N.D. Ill. 1994) (Ginsberg, J.). As the District Court in *Szyszko v. Szyszko* has made clear, there is no question that the Illinois courts would respect such rights, and this court, absent a compelling federal reason to do otherwise, must do the same. No. 01-C-2417, 2001 WL 766905, at \*2 (N.D. Ill. July 6, 2001) (*citing Butner*, 440 U.S. at 55) (Because the Illinois "equitable distribution law creates statutory rights in marital property, the bankruptcy court should honor those laws unless some federal interest requires a different result."); *G&R Manufacturing Co. v. Gunia (In re G&R Manufacturing Co.)*, 91 B.R. 991 (Bankr. M.D. Fla. 1988) ("The Bankruptcy Code...[did not] intend for the Bankruptcy Court to serve as an appellate court for divorce decrees.").

Whether the Debtor's interest in the Retirement Plan constitutes property of the Debtor's bankruptcy estate, however, forces the inquiry back to federal law. The commencement of a

bankruptcy case creates an estate comprised of "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a). The scope of this provision is "broad." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-5 (1983). As the Seventh Circuit Court of Appeals has noted, "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *In re Carousel Int'l Corp.*, 89 F.3d 359, 362 (7th Cir. 1996) (internal quotation and citation omitted).

Despite the broad scope of section 541, the Bankruptcy Code contains a number of exceptions to the general rule. The exception of greatest interest here is contained in section 541(c)(2), which provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in" a bankruptcy case. 11 U.S.C. § 541(c)(2). Under this section, an enforceable transfer restriction in a trust – such as an anti-alienation provision contained in a pension plan qualified under the Employee Retirement Income Security Act of 1974 ("ERISA") – will allow a debtor to exclude such interest from the bankruptcy estate. *See Patterson v. Shumate*, 504 U.S. 753 (1992) (finding that the anti-alienation provision contained in an ERISA-qualified pension plan constituted a restriction on transfer enforceable under applicable nonbankruptcy law; therefore the plan was excluded from bankruptcy estate).

While *Patterson* provides a bright line rule as to whether ERISA-qualified plans are property of a debtor's estate,[1] whether other assets can be excluded from estate property under section 541(c)(2) involves a case-by-case approach requiring the bankruptcy court to analyze the terms of the particular retirement plan at issue. *See Hill v. Dobin*, 358 B.R. 130, 132, 135 (D.N.J. 2006) (even where a plan contains an anti-alienation provision, courts consider whether the provision is "enforceable" under applicable nonbankruptcy law and whether the plan constitutes a "trust").

Although the circumstances of this case seem to indicate that the Retirement Plan contains a restriction on transfer, no evidence to that effect has been submitted. As noted above, neither party has provided the court with the Retirement Plan itself. As such, no analysis can take place and the Debtor has not demonstrated that the Retirement Plan contains an enforceable transfer restriction under applicable nonbankruptcy law.[2] Further, as the Trustee argues, the Debtor has undercut this

---

[1]     ERISA-qualified plans satisfy the "trust" and "enforceability" requirements. First, The *Patterson* Court made clear that ERISA-qualified plans contain anti-alienation provisions that are enforceable under nonbankruptcy law. This is because under ERISA, a plan participant, beneficiary, fiduciary, or the Secretary of Labor may file a civil action to "enjoin any act or practice" which violates ERISA or the terms of the plan. 29 U.S.C. §§ 1132(a)(3), (a)(5). Second, ERISA imposes a trust requirement on plan assets. 29 U.S.C. § 1103; *see also In re Jokiel*, 453 B.R. 743, 751-52 (Bankr. N.D. Ill. 2011) (Barbosa, J.); *In re Handel*, 301 B.R. 421, 430-31 (Bankr. S.D.N.Y. 2003). However, outside the Seventh Circuit, some courts have concluded that even where a plan is ERISA-qualified, a debtor must show that the plan is an express trust to be excluded under section 541(c)(2). *See, e.g., In re Barnes*, 264 B.R. 415, 430-31 (Bankr. E.D. Mich. 2001).

[2]     In this case, the MSA provides that the Debtor "will receive the sum of [$80,000] from the 401(k) plan which shall be transferred via qualified domestic relations order." Objection, Exhibit C (Marital Settlement Agreement), ¶ 7.12. The necessity of a qualified domestic relations order (a "QDRO") to transfer the Debtor's interest to the Debtor appears to indicate that the Retirement Plan is either a 401(k) plan or is ERISA-qualified, or both. In either case, the Retirement Plan would contain an anti-alienation clause or, at the very least, be subject to the anti-alienation provisions built into each statute. *See, e.g.,* 26 U.S.C. § 401(a)(13)(A) (IRC restriction on transfer); 29 U.S.C. § 1056(d)(1) (ERISA restriction on transfer).

very position by scheduling the asset in question as property of the estate. Under the circumstances, therefore, the court cannot conclude that section 541(c)(2) prevents the Debtor's interest in the Retirement Plan from becoming property of her bankruptcy estate. Without evidence to support the argument, the Debtor's request to have her interest in the Retirement Plan be determined not to be property of her bankruptcy estate must fail.

The court therefore finds that the Debtor's interest in the Retirement Plan is property of the estate. Because, however, the Debtor's interest in the Retirement Plan is property of the estate, the statutory exemptions applicable to such property may apply, and the court now turns to the issue that has been the focus of the parties' dispute: whether the Debtor is entitled to exempt her interest in the Retirement Plan.

B. The Debtor's Claimed Exemption

The Debtor here has, in the alternative, claimed her interest in the Retirement Plan as exempt. As noted above, that claim has garnered most of the parties' attention.

By default, debtors in bankruptcy may choose between the exemptions provided by section 522(b)(2) (the so-called "federal" exemption) or, in the alternative, the exemptions listed in section 522(b)(3), which include exemptions provided by state law and federal nonbankruptcy law. *See* 11 U.S.C. § 522(b)(1); *see also In re Bauman*, 11 B 32418, 2014 WL 816407, at *11 (Bankr. N.D. Ill. Mar. 4, 2014) (Goldgar, J.); *Laredo v. Laredo (In re Laredo)*, 334 B.R. 401, 409 (Bankr. N.D. Ill. 2005) (Squires, J.).

If a state "opts out" of the federal exemption scheme provided in section 522(b)(2), debtors that reside in that state may no longer choose, and thus are limited to the exemptions set forth in section 522(b)(3). *See* 11 U.S.C. § 522(b)(2); *see also Bauman*, 2014 WL 816407, at *12. Illinois has "opted out" of the federal exemption scheme. *See* 735 ILCS 5/12-1201. Accordingly, Illinois debtors are restricted to the exemptions in section 522(b)(3), which, in turn, include Illinois exemption statutes.

---

The court, however, should not be required to speculate as to the contents of the Retirement Plan. *See Progressive N. Ins. Co. v. Salata*, 3:10-CV-214, 2011 WL 3806267, at *4 (N.D. Ind. Aug. 26, 2011) (declining to speculate and construct a party's potential arguments); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Though the parties' choice of terms and whatever inference the court might draw from the terms of the MSA might both indicate that the Retirement Plan has the essential attributes, the court is without evidence in that regard and, without evidence, it cannot conclude that the Retirement Plan contains an enforceable transfer restriction under applicable nonbankruptcy law. Had the Debtor provided sufficient evidence to that effect, existing case law may have supported a finding that the Debtor's interest in the Retirement Plan is excluded from the bankruptcy estate. *See Nelson v. Ramette (In re Nelson)*, 322 F.3d 541, 545 (8th Cir. 2003) (finding that a debtor who acquires an interest in an ERISA-qualified plan via a QDRO can exclude that interest from a bankruptcy estate in the same way that the plan participant himself could have excluded it because such a plan would contain an enforceable anti-alienation provision); *see also Ostrander v. Lalchandani (In re Lalchandani)*, 279 B.R. 880, 885-86 (B.A.P. 1st Cir. 2002) (same).

5

Here, the Debtor has claimed her interest in the Retirement Plan as exempt under section 12-1006 of the Illinois Code of Civil Procedure,[3] which provides in pertinent part as follows:

> A debtor's interest in or right, whether vested or not, to the assets held in or to receive pensions, annuities, benefits, distributions, refunds of contributions, or other payments under a retirement plan is exempt from judgment, attachment, execution, distress for rent, and seizure for the satisfaction of debts if the plan (i) is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended....

735 ILCS 5/12-1006(a).

To qualify for the Illinois exemption, the retirement plan must be held in "a trust or equivalent arrangement," *In re Schoonover*, 331 F.3d 575, 577 (7th Cir. 2003), and must come within the Internal Revenue Code provisions for tax-qualified retirement plans, *In re Ellis*, 274 B.R. 782, 787 (Bankr. S.D. Ill. 2002). As noted by bankruptcy courts in this Circuit, "the language of § 12-1006(a)... [is] unequivocal in protecting *any* interest a debtor may have in the assets of a pension or retirement plan and *any* right to receive benefits, distributions, or other payments under such a plan." *In re Lummer*, 219 B.R. 510, 512 (Bankr. S.D. Ill. 1998); *see also In re Dzielak*, 435 B.R. 538, 551 (Bankr. N.D. Ill. 2010) (Barbosa, J.). The statute is broad and "devoid of any suggestion that its scope excludes debtors who have come into their pension rights derivatively." *Lummer*, 219 B.R. at 512; *see also Dzielak*, 435 B.R. at 551.

Several things work in favor of the Debtor in her claim. First, a debtor's claim of exemptions is presumptively valid. 11 U.S.C. § 522(*l*). Second, the Seventh Circuit has made clear that the Illinois exemption statutes are to be interpreted in favor of a debtor. *In re Barker*, 768 F.2d 191, 196 (7th Cir. 1985) ("[W]here an exemption statute might be interpreted either favorably or unfavorably vis-á-vis a debtor, we should interpret the statute in a manner that favors the debtor."); *see also Laredo*, 334 B.R. at 410.

Here, the Trustee does not dispute that the Retirement Plan constitutes a valid "retirement plan" for purposes of the Illinois exemption statute. Nor does the Trustee challenge that the Debtor has an interest in assets of or payments under the Retirement Plan. Thus the Debtor's claim of exemption, standing alone, is not challenged and is presumptively valid. 11 U.S.C. § 522(*l*). Were no transfer of assets from the Retirement Plan required, the court's inquiry would be concluded.

## C. The Effect of the Transfer

The Trustee, however, did object. The crux of the Trustee's objection is that, given that Debtor's interest in the Retirement Plan must still be transferred to the Debtor, the need for and nature of that transfer causes the otherwise exempt interest to be nonexempt.

---

[3]     Because the Debtor has not claimed an exemption under § 522(b)(3)(C) (providing an exemption for retirement funds to the extent they are in an account exempt from taxation under certain provisions of the Internal Revenue Code), the court's analysis is limited to the Illinois exemption. *See, e.g., Bauman*, 2014 WL 816407, *13 (parties must not be required to guess at the legal basis for an exemption claim, and thus failure to provide the federal exemption statute as the basis for an exemption equates to the party not claiming an exemption in that regard).

This is not an issue of first impression in this court. In 2010, under facts similar but not identical to those at bar here, Judge Barbosa rejected a similar contention by a Chapter 7 trustee. *Dzielak*, 435 B.R. at 551. In *Dzielak*, the trustee argued that the transfer of funds from the debtor's spouse's retirement plan to her defeated the exempt nature of the funds. As noted by Judge Barbosa, the trustee argued "that the Debtor cannot assert the retirement plan exemption because what she will receive is not a 'retirement plan' in her hands." *Id.* at 549 ("'[S]he is trying to assert her ex-husband's exemption.'").

This court agrees with Judge Barbosa's thoughtful analysis in *Dzielak*. In particular, Judge Barbosa's conclusion, that irrespective of the pending transfer, a debtor is entitled to assert an exemption of her spouse's retirement plan based on her Illinois rights arising from their concurrent divorce proceedings, is well taken. As Judge Barbosa stated, "at issue today is only whether the Debtor has the right to assert an exemption in the still-contingent interest, and not whether the contingency has occurred or whether certain property in the hands of the Debtor constitutes the property for which the exemption was claimed. The Debtor has a right to claim an exemption at least in the plan itself, and that is all she has done." *Id.* at 551.

There are two differences, however, between the situation presented to the court in *Dzielak* and that before the court today.

First, unlike in *Dzielak*, the Debtor here has an interest that is no longer contingent. The debtor in *Dzielak* was relying on her rights under 750 ILCS 5/503(e), while the Debtor's rights here arise under the Judgment for Dissolution, and by extension, the MSA. This is not a reason, however, to weaken the holding of *Dzielak*, but to strengthen it. As noted previously, except in limited circumstances not at issue here, bankruptcy courts adhere to the rulings of the state courts on such matters. *Cullen*, 2000 WL 381929, at *4; *Brown*, 168 B.R. at 334. The court finds no reason to part from the logic of *Dzielak* on this basis.

Second, there is a recent Seventh Circuit decision that the Trustee argues changes the law in this arena. This second difference warrants further discussion.

The Seventh Circuit has recently considered whether a debtor's claim of exemption in a retirement account inherited but not yet transferred to her is valid. *In re Clark*, 714 F.3d 559 (7th Cir.), *cert. granted sub nom. Clark v. Rameker*, 134 S. Ct. 678 (2013). In *Clark*, the Court of Appeals considered whether sections 522(b)(3)(C) and (d)(12) of the Bankruptcy Code could be used as the basis for such an exemption. As with the Illinois exemption statute, these provisions require that the funds in question be "retirement funds" and that they be in an account that is exempt from taxation under certain sections of the Internal Revenue Code. 11 U.S.C. § 522(b)(3)(C), (d)(12); *Clark*, 714 F.3d at 559-60. The Court held that the funds in the non-spousal inherited IRA were not "retirement funds" within the meaning of section 522(b)(3)(C) or (d)(12) of the Bankruptcy Code, and could not be successfully claimed as exempt by the debtor. *Clark*, 714 F.3d at 562.

In making its determination, the Court analyzed the economic attributes of non-spousal inherited IRAs and compared them to the attributes of spousal inherited IRAs. The Court noted that the attributes of a non-spousal inherited IRA changed upon the inheritance, such that: (i) new contributions could not be made; (ii) the balance could not be rolled over or merged with any other account; (iii) the distributions were required to begin within a year of the original owner's death

7

rather than being dedicated to the beneficiary's retirement years; and (iv) the payout must be completed within five years. *Id.* at 560.

It is true that, at least as the Debtor's interest is concerned, the Retirement Plan here seems to bear some of these traits in common with that of the IRA in *Clark*. The Debtor cannot, it appears, make new contributions to the Retirement Plan and the Debtor's interest will not remain in the Retirement Account per the terms of the MSA.

But there are important differences. Unlike in *Clark*, prior to the ownership change (in *Clark* the devise, in this case the marriage dissolution), these funds were the Debtor's retirement funds per operation of Illinois law. *Clark* concluded that an inherited IRA "did not represent *anyone's* retirement funds" after the passing of the devisor. *Clark*, 714 F.3d at 561. Here, however, pursuant to applicable Illinois law, the funds in the Retirement Plan belonged jointly to both the Debtor and her former spouse prior to the entry of the Judgment of Dissolution, and though now divided, continue in each divided part to be each spouse's respective retirement funds.

Further, unlike in *Clark*, the Debtor's interest in the Retirement Plan may be rolled over or merged with another account; never losing its tax-deferred attributes. The MSA requires the transfer of that now divided Retirement Plan to be done by a QDRO. A QDRO is a transfer mechanism specifically designed to comport with the IRC and ERISA transfer restrictions, retaining the asset's tax attributes. 26 U.S.C. § 401(a)(13)(B) (allowing a state court to assign retirement benefits without penalty through a QDRO); 29 U.S.C. § 1056(d)(3)(A), (d)(3)(B)(i) (same); *see also In re Remia*, 503 B.R. 6, 12, n. 38 (Bankr. D. Mass. 2013) (both "ERISA and the IRC were designed so that the type of funds at issue would retain their character as tax-exempt throughout the process of a marital property settlement."). A distribution received under a QDRO may be rolled over into an eligible retirement plan, such as an IRA, so as to preserve the fund pending such alternate payee's retirement. *See* 26 U.S.C. § 402(c), (e)(1); *see also In re Abbata*, 157 B.R. 201, 205 (Bankr. N.D.N.Y. 1993); *accord Dzielak*, 435 B.R. at 551. This exception to the anti-alienation requirement of ERISA was designed "to give enhanced protection to the spouse and dependent children in the event of divorce or separation." *See Boggs v. Boggs*, 520 U.S. 833, 847 (1997).

Provided, therefore, that the transfer is done in the form required by the MSA, the nature of the Debtor's interest in her retirement funds will not change as a result of the transfer.

At oral argument, much of the discussion centered on whether the transfer presented an "opportunity for present consumption." In *Clark*, the Seventh Circuit wrote that "inherited IRAs represent an opportunity for current consumption, not a fund of retirement savings." *Clark*, 714 F.3d at 562. It is true that, should the Debtor be permitted to violate the terms of the MSA, there may be an opportunity here for present consumption. That does not, however, change the nature of Debtor's interest in the Retirement Plan.

The critical factor in *Clark* was that the IRA's retirement attributes had been lost upon inheritance by a non-spouse.[4] In contrast, a retirement plan transferred pursuant to a QDRO is done expressly for the purpose of preserving the retirement nature of the plan. The facts here do

---

[4]     *Clark* expressly held that the inheritance of a retirement plan by one spouse from the other would not result in a change in tax attributes of the plan. *Clark*, 714 F.3d at 560.

not truly present an opportunity for immediate consumption. What is presented is something that nearly all retirement funds offer: an opportunity to access the funds after the appropriate penalty and tax are withheld. 26 U.S.C. § 72(t) (providing that a 10 percent tax is imposed on any distribution from a qualified retirement plan if the distribution fails to satisfy one of several statutory exceptions); *see also Rousey v. Jacoway*, 544 U.S. 320, 323 (2005). The ability for early withdrawal under such conditions does not, in itself, affect the nature of a retirement plan's exempt status. *See, e.g., In re Ritter*, 190 B.R. 323, 326-27 (Bankr. N.D. Ill. 1995) (Squires, J.) (finding that debtor was entitled to exempt retirement accounts under 735 ILCS 5/12-1006 even though she had withdrawn some funds from the accounts prior to reaching mandatory retirement age).

The court therefore concludes that the reasoning of *Clark* does not dictate a result other than that previously provided in *Dzielak*, as modified to fit the facts of this case. Because the Debtor's interest in the Retirement Plan meets the requirements of section 12-1006 of the Illinois Code of Civil Procedure and because the Debtor's distribution from the Retirement Plan is to be transferred in a way so as to preserve the retirement nature of the funds, she has properly claimed an exemption of her interest in the Retirement Plan.

## CONCLUSION

For the foregoing reasons, the Objection must be overruled and the exemption permitted. The Debtor's interest in the Retirement Plan is exempt. A separate order to that effect will be entered concurrent with this Memorandum Decision.[5]

Dated: March 26, 2014

Timothy A. Barnes
United States Bankruptcy Judge

---

[5]   The court is aware that the Seventh Circuit's ruling in *Clark* is on appeal before the Supreme Court. Given that the court's ruling in this matter does not rely on the validity of the holding in *Clark*, there is no conflict between today's ruling and that process, and no reason to delay entry of an order overruling the Objection.